UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MESROB OKOORIAN,

    Plaintiff,

v.

                              Case No.  8:19-cv-1063-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

_____/

## **ORDER**

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision is affirmed.

I.

The plaintiff, who was 40 years old at the time of the administrative hearing and who has a college associate's degree, has past relevant work as an exterminator, dealer/gambling, and money room teller (Tr. 22, 36).  He filed a claim for disability benefits, alleging that he became

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 24).

disabled due to back and neck pain, high blood pressure, depression and anxiety (Tr. 65). The claim was denied initially and upon reconsideration.

At his request, the plaintiff received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease and meniscus tear, right knee (Tr. 17). She determined that the plaintiff's mental impairments were non-severe.

Based on the testimony of a vocational expert, the law judge determined that the plaintiff was able to perform past work as an exterminator, dealer/gambling, and money room teller (Tr. 22). The law judge alternatively concluded, based on the vocational expert's response to a hypothetical question that included mental functional limitations, that the plaintiff could perform other jobs that exist in significant numbers in the national economy, such as ticket seller, cashier, and sales attendant (Tr. 23–24). Accordingly, she decided that the plaintiff was not disabled (Tr. 24). The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

A. In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. 423(d) (l )(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). Also, the Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied, and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g).

III.

The plaintiff's sole argument is that "[t]he ALJ's RFC Finding and Hypothetical to the VE was Unsupported by Substantial Evidence" (Doc. 28, p. 10). Beneath this impermissibly overbroad title the plaintiff identifies two discrete arguments. The plaintiff contends that the residual functional capacity fails to account for his (1) mental impairments and (2) right and left knee meniscal tears (id.).[2] Neither contention has merit.

---

[2]Any other contention is forfeited in accordance with the Scheduling Order and Memorandum Requirements (see Doc. 16, p. 2) ("arguments within a properly articulated issue must relate directly to the particularized issues and shall not include unrelated contentions" and "discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards"); see also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855, 859, n.1 (11th Cir. 2013) citing Access now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("A legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

A.    Regarding the plaintiff's mental impairments, the law judge acknowledged that the plaintiff had a history of depression and anxiety and he took psychotropic medication (Tr. 18).  Furthermore, she recounted the plaintiff's allegations that he had difficulty with memory, understanding, completing tasks, concentration, and getting along with others (Tr. 18–19, 21).  The law judge also discussed that the plaintiff received a 30% VA disability rating for an adjustment disorder (Tr. 21).  However, the law judge concluded that the medical record and the plaintiff's activities of daily living show that the plaintiff's mental impairments did not significantly limit his ability to perform basic work-related activities; i.e., that the plaintiff's mental impairments were non-severe (Tr. 18–19).  The plaintiff argues this finding was erroneous.

The regulations define a non-severe impairment as one that does not significantly limit plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. 404.1520(c).  The law judge acknowledged this standard in her decision (Tr. 16) and applied it to the plaintiff's psychological disorders (see Tr. 18–19).  She found that the plaintiff had only mild limitations in the pertinent mental functional areas of understanding, remembering or applying information; interacting with others; the ability to concentrate, persist or maintain pace; and the ability to adapt or manage himself (id.).  The law judge

6

concluded that, because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are non-severe (20 CFR 404.1520a(d)(1)) (Tr. 19). As the Commissioner points out (Doc. 30, pp. 11–12), when a claimant is only mildly impaired in the pertinent areas of mental functioning, it is appropriate to find that the medically determinable mental impairments are non-severe. Stone v. Commissioner of Social Security, 586 Fed. Appx. 505, 510 (11th Cir. 2014); 20 C.F.R. 404.1520a(d)(1); see also Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (It is the functional limitations, not the diagnosis, that establishes the severity of an impairment.).

In making this determination, the law judge considered that the plaintiff's "mental examination findings were largely normal" (Tr. 22). The law judge cited several examples of such findings (Tr. 18):

> Mental status finding[s] show the claimant displayed good judgment and insight. He was alert and fully oriented, but anxious. His recent and remote memories were intact. (Exhibit C2F). In June of 2015 the record shows the claimant attended a therapy session with Lynn M. Gulick, Ph.D. The claimant admitted that he was "fine." However, he complained of depression and difficulty with concentration. Mental status findings show he was alert, cooperative, and oriented. There were no

cognitive deficits observed. His speech was normal and his behavior was appropriate. (Exhibit C4F).[3]

Thereafter, progress notes in May of 2016 show that the claimant was alert, attentive, and fully oriented. Grooming was appropriate. Speech had normal cadence. Mood was euthymic and affect was anxious. There were no perceptual disturbances or abnormal thought content. Insight and judgment were good. Memory was intact. Fund of knowledge was average. In November of 2016, the claimant admitted his [mental] symptoms were stable (Exhibits C6F).

The law judge appropriately considered the normal objective findings in determining whether the plaintiff had mental work limitations. See Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005).

Furthermore, substantial evidence supports the law judge's finding that the plaintiff's "mental examination findings were largely normal" (Tr. 22). Thus, at the plaintiff's (two) therapy sessions, he had normal mental status examinations except for an anxious or "stressed" mood (Tr. 420; Tr. 543) (quotations in original). Notably, the plaintiff reported that his "anxiety is actually fairly controlled" with medication and that he "has been job hunting" (Tr. 418, 421). Furthermore, at a C&P Evaluation in July 2015, psychologist Dr. Gulick found that the plaintiff's mental status was normal.

---

[3]As the plaintiff notes, the law judge incorrectly stated the date of the appointment. The plaintiff met with Dr. Gulick the following month, in July 2015, for a Compensation & Pension (C&P) examination to assess disability, not for therapy.

8

She observed that the plaintiff had a euthymic mood; was oriented x4 and maintained good eye contact; demonstrated linear, logical and goal-directed thought processes; reported no hallucinations or delusions; and that the plaintiff's attention, concentration, memory, and reasoning were within normal limits (Tr. 409–10; see also Tr. 713 (Dr. Lisa Richards recorded normal mental status examinations in July 2017)). Moreover, at appointments for physical conditions, the plaintiff's doctors also found that the plaintiff's mental status was normal except for feeling anxious at times (Tr. 333, 339, 345, 611, 634).

Additionally, the law judge considered that the record shows no more than routine and conservative treatment (Tr. 22), except for one brief visit to the emergency room for palpitations/anxiety. The finding of conservative treatment is supported by substantial evidence, as the plaintiff requested only two mental health appointments during the alleged disability period, and he declined the psychologists' offers for further therapy.[4]

Furthermore, the law judge considered that the plaintiff "engages in a wide range of activities of daily living and he continued to seek employment after his alleged onset date of disability" (id.). See Beegle v.

---

[4]The plaintiff stated that he declined follow-up due to financial constraints and not having gas money (Tr. 541) despite the VA offering "travel pay" (Tr. 518). The two C&P examinations were for the purpose of assessing a disability rating (see Tr. 402, 708).

Social Security Administration Commissioner, 482 Fed. Appx. 483, 487–88 (11th Cir. 2012) (considering daily activities in determining whether mental impairments are severe); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (it is appropriate under the regulations to consider a plaintiff's activities of daily living in determining disability). Specifically, the law judge recounted that the plaintiff "stated he could perform household chores, prepare meals, pay bills, shop in stores, drive a car, read for enjoyment, and play video games"; that he "spend[s] time with friends and family"; and that the plaintiff takes his young minor son "on public outing[s], e.g., movies, aquarium, SkyZone and the fishing dock" (Tr. 19).

Moreover, the law judge considered the assessments of non-examining reviewing psychologists (id.). Dr. Luisa Burgio and Dr. Brian McIntyre opined that the plaintiff had only mild limitations in activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace (Tr. 71, 84). Dr. Burgio noted, in particular, that despite an anxious/depressed mood, all other aspects of the mental status examinations were normal (Tr. 71–72). Dr. McIntyre emphasized that the plaintiff can "engage in self-care, prepare meals, assist in light household chores, grocery shop, engage in social activities and drive," and he opined that

the mental status examinations illustrate that there is "not ... [a] significant

impact from mental health difficulties at this time" (Tr. 85).

The law judge gave significant weight to the opinions of Dr.

Burgio and Dr. McIntyre (Tr. 19). She explained (id.):

> Both Drs. Burgio and McIntyre are licensed
> psychologists familiar with the evidentiary
> requirements of the Social Security Regulations and
> they provided detailed and persuasive rationales in
> support thereof consistent with the clinical and
> objective findings at Exhibits C1F-C5F and with his
> reported activities of daily living and third party
> statements at Exhibits C7E, C12E, and C15E.
> (Exhibits C2A, C5A).    Moreover, the record
> contains no persuasive conflicting medical opinions
> nor does evidence received at the hearing level
> support greater limits (Exhibits C1F-C13F).

Notably, the opinions of Dr. Burgio and Dr. McIntyre are shared by the VA

examining psychologists (see Tr. 402–414, 708–714). Thus, Dr. Lisa Richards

opined:

> Regarding functional impairment, the veteran's
> diagnosis of adjustment disorder with anxiety and
> depressed mood does not prohibit him from
> performing the tasks and responsibilities normally
> associated with a full-time occupational or
> educational setting. Thus, there are no functional
> limitations from a mental health perspective.

(Tr. 713) (emphasis added). Furthermore, Dr. Gulick opined that the plaintiff

had "mild or transient symptoms which decrease work efficiency and ability

to perform occupational tasks only during periods of significant stress, or, symptoms controlled by medication" (Tr. 405).

In sum, the law judge gave ample reasons, supported by substantial evidence, for finding that the plaintiff did not have a severe mental impairment during the insured period.

The plaintiff does not undermine any of the reasons given by the law judge for finding his psychological disorders are non-severe. Rather, the crux of his argument is that the law judge's discussion of the medical records was inadequate (Doc. 28, pp. 11–14). This contention is meritless.

As discussed supra, pp. 6–10, the law judge references the mental health records, details several of those findings, and correctly summarizes that they show essentially normal mental examinations. Although the law judge did not specify the findings of each medical record, as the Commissioner argues (Doc. 30, p. 17), "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the decision is not "just a broad rejection" that does not enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. Boyette v. Commissioner of Social Security, 605 Fed. Appx. 777, 778 (11th Cir. 2015), quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). The law judge's decision clearly shows that she considered the

12

plaintiff's mental condition as a whole, and the decision is undoubtedly one that the court can review meaningfully.

The plaintiff argues, particularly, that the law judge failed to consider records "documenting his inability to even take an online class at home, resulting in [the plaintiff] going to the Emergency department for an anxiety attack" (Doc. 28, p. 13). However, the law judge expressly considered that emergency room visit. She stated (Tr. 18):

> [I]n January of 2016 the claimant presented to the emergency room with complaints of palpitations, shortness of breath, and anxiety. Physical examination findings show he had a regular heart rate and rhythm and he was in no respiratory distress. His mood and affect were normal. ... At the emergency room, he admittedly no longer felt anxious. He was placed on Cymbalta and Xanax and he was advised to follow up with his primary care provider. (Exhibit C3F).

The plaintiff does not develop an argument how this one visit compels mental functional limitations. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").

The plaintiff also emphasizes that he complained of anxiety to his medical providers throughout the alleged disability period (Doc. 28, p. 11).

13

The law judge acknowledges the plaintiff's reports of anxiety and/or depression, and she recounts his symptoms (see Tr. 18, 21). However, the law judge found that the plaintiff's allegations of work impairments due to mental limitations were not credible (Tr. 22). That credibility determination is unchallenged. Therefore, the plaintiff's references to subjective complaints are insufficient to warrant remand. As previously shown, the law judge found that the plaintiff had only mild limitations in the four broad areas of mental functioning.

The plaintiff argues that the law judge erred in failing to include any mental limitations in the residual functional capacity, "which [s]he then relies on" (Doc. 28, p. 13). Substantial evidence supports those findings and the plaintiff has not shown otherwise. In light of these findings, the law judge could reasonably conclude, as she obviously did, that the residual functional capacity did not require any mental functional limitations.

Finally, even if the law judge erred in finding the plaintiff's mental impairments non-severe (which she did not), that determination would be harmless error. An error is harmless if it does not affect the judge's ultimate determination. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in a Social Security appeal after finding that an administrative law judge made "erroneous statements of fact").

14

"[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." Miller v. Barnhart, 182 Fed. Appx. 959, 964 (11th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Although the law judge did not include mental functional limitations in the residual functional capacity, she did include such limitations in a hypothetical question to the vocational expert. Thus, following the law judge's hypothetical question to the vocational expert regarding the plaintiff's physical limitations, the law judge posed the following questions to the vocational expert (Tr. 57):

> Q: Now, if I were to add that the work must be unskilled, SVP 1 or 2 only, and not at production pace, defined to mean not on assembly line, not where he is paid by the piece produced, is the past work available then?

> A: No. The past work is semiskilled to skilled, and so it would not be available.

> Q: All right. Is there other work in the national economy that this individual can perform?

> A: Yes. And by way of example, ... ticket seller under DOT number 211.467-030, and that will be light level exertionally, and unskilled, and the SVP is 2. ... Additionally, Your Honor, per this

15

> hypothetical, a cashier under DOT number 211.462-010, and that, too, is light level exertionally and unskilled, and the SVP is 2 .... And, then, Your Honor, as a third example, the position of sales attendant under DOT number 299.677-010, and that, too, is light level exertionally and unskilled, and the SVP is 2.

The law judge, based upon this testimony, made an alternative finding that the plaintiff was not disabled because he could perform the representative jobs of ticket seller, cashier and sales attendant. Accordingly, the law judge accounted for limitations to unskilled work at a non-production pace (Tr. 24, 57). Consequently, the plaintiff, in order to show reversible error, would need to identify evidence compelling the law judge to include greater mental functional limitations that would have affected the law judge's ultimate determination. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff has not done so.

The plaintiff argues, vaguely, that, if the law judge had "include[d] limitations due to severe anxiety in h[er] hypothetical to the VE, the VE testimony would have changed" (Doc. 28, p. 13). This contention is meritless if the plaintiff is asserting that the hypothetical question should have included the condition of anxiety. It is the functional limitations from an impairment that are properly included in a hypothetical question to the vocational expert, see Wright v. Commissioner of Social Security, 327 Fed.

16

Appx. 135, 137 (11th Cir. 2009), and a diagnosis of anxiety is not a functional limitation. Thus, "anxiety" is a vague term that must be translated into functional work limitations so that the vocational expert may meaningfully opine what, if any, jobs are available. Therefore, this argument fails. [5]

The plaintiff equivocally asserts in the last sentence of his argument that "anxiety would potentially preclude [him from] working with or around others and taking criticism from supervisors" (Doc. 28, p. 15). As the Commissioner points out (Doc. 30, p. 18), the plaintiff does not support this argument with any references to the record. Therefore, it is forfeited in accordance with the Scheduling Order, which required the plaintiff to support his arguments with "citations to the record of the pertinent facts and by citations to the governing legal standards" (Doc. 16, p. 2).

In all events, there is no credible evidence supporting such a limitation. To the contrary, each psychologist who addressed the plaintiff's mental work functioning opined that the plaintiff had no such functional limitations (see Tr. 405 (Dr. Gulick opined that "[t]he veteran's ability to respond appropriately to coworkers, supervisors, or the general public is

---

[5]Anxiety as a symptom of a mental disorder is deficient for the same reasons. See, e.g., Beegle v. Social Security Administration Commissioner, 482 Fed. Appx. 483, 490 (11th Cir. 2012) (The plaintiff's challenge to the operative hypothetical question is rejected because the plaintiff did not state "how the pain in his right knee further limited his ability to work beyond that already provided for in the ALJ's hypothetical questions.").

considered not impaired."); Tr. 713 (Dr. Richards opines that the plaintiff has

"no functional limitations from a mental health perspective"); Tr. 71, 84 (Dr.

Burgio and Dr. McIntyre opine that the plaintiff had only mild limitations in

maintaining social functioning)).    Therefore, this argument also fails on its

merits.  See Crawford v. Commissioner of Social Security, 363 F.3d 1155,

1161 (11th Cir. 2004) (The law judge is not required to include restrictions in

the hypothetical question that he properly finds are unsupported.).  In sum,

even if the law judge erred in failing to include mental functional limitations

in the plaintiff's residual functional capacity, the alternative jobs the law judge

found that the plaintiff could perform accommodate mental functional

limitations and, therefore, an error would be harmless.

   B. The plaintiff also contends that the law judge "fails to

adequately explain why [s]he rejected the ... VA [Veterans Administration]

disability rating of 30% due to chronic adjustment disorder" (Doc. 28, p. 12).

This contention is unavailing.

    In this regard, the law judge stated (Tr. 21):

> [T]he claimant is currently receiving disability
> benefits through the Department of Veterans Affairs
> with a 60 percent VA rating, *i.e.,* 30 percent for
> adjustment disorder, 20 percent for paralysis of the
> sciatic nerve, and 20 percent for lumbar strain ....
> However, the opinion of another government agency
> regarding disability is based on its rules, while the
> undersigned Administrative Law Judge must make a

disability determination based on Social Security law. Although such evidence is certainly legitimate and deserves due consideration, VA personnel essentially confine themselves to rating the claimant's VA percentage, which is not binding on Social Security due to the VAs more lenient and specific nature involving demanding military service. That is, the veteran may not be fit for the extraordinary demands of the armed forces, but would not be precluded from many civilian jobs *per se* (20 CFR 404.1504). For the above reasons, the undersigned finds the opinion of the VA less than persuasive.

The law judge also stated in the decision that the VA and other medical records did not contain opinions or examination findings supporting mental functional limitations (see Tr. 18, 19, 22).

The disability decisions of the VA and other agencies are not binding on the law judge. 20 C.F.R. 404.1504; Adams v. Commissioner of Social Security, 542 Fed. Appx. 854, 856 (11th Cir. 2013). The court of appeals, however, has said that VA disability determinations must be given great weight. Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981). The Fifth Circuit explicated this principle in Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001):

In Rodriguez and its progeny, we have sometimes referred to a VA disability determination as being entitled to "great weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations

19

> for disability status differ between the SSA and the
> VA, ALJs need not give "great weight" to a VA
> disability determination if they adequately explain
> the valid reasons for not doing so.

See also Pearson v. Astrue, 271 Fed. Appx. 979, 980–81 (11th Cir. 2008).[6]

Therefore, in this case "the law judge correctly explained the VA

and SSA use different criteria for determining disability." Ostborg v.

Commissioner of Social Security, 610 Fed. Appx. 907, 914 (11th Cir. 2015).

The law judge did not, however, disregard this evidence, as she stated that

"such evidence is certainly legitimate and deserves due consideration" (Tr.

21). Furthermore, the decision shows that the law judge implicitly disagreed

with the VA's assessment of a 30% mental disability rating for the same

reasons that she found that the plaintiff's mental impairments are not severe.

See Boyette v. Commissioner of Social Security, 605 Fed. Appx. 777, 778

(11th Cir. 2015) ("The ALJ may make fact findings implicitly if the implication

is sufficiently clear."); cf., Kemp v. Astrue, 308 Fed. Appx. 423, 426 (11th Cir.

2009) (the weight given to VA records was implicit in the decision). Thus, the

law judge, in referencing in the VA records, noted that the mental status

examinations were "largely normal", there were no persuasive conflicting

---

[6]The Social Security Administration updated this regulation to provide that, for
claims filed on or after March 27, 2017, "we will not provide any analysis in our
determination ... about a decision made by any other governmental agency ... about
whether you are ... entitled to any benefits."

medical opinions, and the plaintiff's varied activities of daily living were inconsistent with such limitations. See Boyette v. Commissioner of Social Security, supra, 605 Fed. Appx. at 780 (the law judge did not err in discounting a 100% disability rating where VA treatment notes, examining VA doctor opinions, and other medical evidence support the law judge's RFC assessment).[7]

Significantly, the record does not indicate any specific findings or explanation for the VA's disability rating. Therefore, it is unclear how the law judge could have further analyzed this matter, especially considering that the 30% disability rating for adjustment disorder does not appear to be supported by the mental assessments of VA examining psychologists Dr. Gulick and Dr. Richards (see Tr. 409–10, 713). See Zuba-Ingram v. Commissioner of Social Security, 600 Fed. Appx. 650, 656 (11th Cir. 2015) ("The factual findings underlying the VA's ... disability rating ... were consistent with the ALJ's conclusion she could work.").

In sum, the law judge could reasonably reject the VA rating considering that there was no explanation for the rating, and the medical record

---

[7]The plaintiff cites to Gibson v. Commissioner of Social Security, 725 F. Supp.2d 1347 (M.D. Fla. 2010). In Gibson, the case was remanded because the law judge failed to state the weight assigned to the VA rating, and provided no analysis so the court could not do meaningful review. That case is factually inapposite, as neither circumstance applies here.

does not compel a finding of mental functional work impairments. Therefore, the plaintiff's contention that the law judge erroneously discounted the VA's disability rating is unpersuasive.[8]

Moreover, as indicated, the law judge's alternate finding that the plaintiff could perform the jobs of ticket seller, cashier and sales attendant incorporates mental functional limitations, and the plaintiff makes no cogent argument that a 30% VA disability rating requires greater mental functional limitations than those included in the pertinent hypothetical question. Therefore, any error in this regard would also be harmless.

IV.

Finally, the plaintiff argues, in a vague and cursory manner, that the residual functional capacity "did not properly account for [his] right and left knee meniscal tears resulting in limitations standing and walking and climbing stairs" (Doc. 28, p. 10). The plaintiff's contention is meritless.

The plaintiff testified at the hearing that he has moderate pain in his knees and that the right knee is worse (Tr. 43–45). The law judge acknowledged the plaintiff's complaints of knee pain and that the plaintiff had

---

[8]The plaintiff also includes the bald assertion that the law judge did not adequately address the VA's physical impairment ratings of 20% for paralysis of the sciatic nerve and 20% for lumbar strain (see Doc. 28, p. 12). This discrete issue was not properly articulated or developed in the argument section of his memorandum (see id., pp. 10–15). Therefore, it is forfeited (see Doc. 16, p. 2).

an MRI of the right knee in August 2013 (more than one year before this alleged disability period) "which showed an intrameniscal tear with intrameniscal cyst. (Exhibit C1F)" (Tr. 21). The law judge, consequently, restricted the plaintiff to a substantially reduced range of light work (Tr. 22).

In making this determination, the law judge explained that the objective evidence did not warrant greater limitations (Tr. 18, 21–22). The law judge considered that physical examination findings "were largely normal" (Tr. 22). For example, the law judge recounted that, in March 2015, the plaintiff's "[m]otor strength and tone w[ere] normal. His gait and station were normal. Sensation and reflexes were intact. Monofilament testing was normal. There were no neurological deficits noted" (Tr. 21). The law judge also stated, correctly, that "the record shows no more than routine and conservative treatment" (Tr. 22). Other treatment notes similarly showed normal musculoskeletal findings (Tr. 334, 339), including comprehensive examinations by orthopedist Dr. Robert Butler, who observed that the plaintiff had normal gait and station; normal coordination; full range of motion in the knees, full strength in all motor groups; normal reflexes, and no weakness, tenderness, effusion or crepitance in the knees (Tr. 611, 614–15). Furthermore, the law judge considered that the plaintiff "engaged in a wide range of activities of daily living and he continued to seek employment after

his alleged onset date of disability," which she found were also inconsistent with greater functional limitations (Tr. 22).

Moreover, reviewing non-examining physician, Dr. Thomas Renny, opined that the plaintiff remained able to "perform light level exertion with some postural and environmental limitations" (id.). Dr. Renny explained that the essentially normal physical examinations belie greater functional limitations and that the plaintiff's allegations of greater limitations appear to be not credible based on the totality of the medical evidence (see Tr. 87).

The law judge gave significant weight to Dr. Renny's assessment (Tr. 21). She explained:

> Dr. Renny is a licensed physician familiar with the evidentiary requirements of the Social Security Regulations and he provided a detailed and persuasive rationale in support thereof consistent with the clinical and objective findings discussed above at Exhibits C1F-C5F. (Exhibit C5A). Moreover, the record contains no conflicting medical opinions nor does evidence received at the hearing level generally support greater limits. (Exhibits C1F-C13F). The undersigned finds accordingly that the claimant remains able to perform a wide range of light level exertion....

(Tr. 22).

Additionally, the law judge discussed that the plaintiff subsequently injured his left knee due to a slip and fall, and that an MRI of his

left knee in May 2017 showed a horizontal tear of the lateral meniscus (id.).

The law judge summarized the medical records:

> Orthopedic records show he had tenderness to palpitation along the medial joint space with positive McMurray's and positive pivot shift tests. A partial lateral meniscectomy was discussed, but the claimant did not want to have it done at that time. (Exhibit C8F). He requested a referral for physical therapy and he attended approximately two sessions. (Exhibits C11F, C13F). Based on this, the undersigned has provided for greater postural limitations, favorable to the claimant's allegations, as determined at Finding 5.

(id.).[9]

The plaintiff, in challenging the law judge's determination, does not undermine any of the law judge's reasoning. Rather, he argues in a vague and conclusory manner that, if the law judge "properly considered the severity of [his] bilateral knee pain, most particularly his right knee due to meniscular tear ... he would not have found that [the plaintiff] could perform ... light work" (Doc. 28, p. 14). However, the plaintiff does not identify a medical

---

[9]The law judge did not find the plaintiff's left knee meniscus tear was a severe impairment. The plaintiff does not challenge the law judge's decision on this ground, nor would that be a possible basis for reversible error because, as the plaintiff acknowledges, the finding of any severe impairment ... is enough to satisfy step two," Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987), and the law judge included in the residual functional capacity accommodations for that impairment.

opinion or other medical evidence compelling the law judge to find greater functional limitations. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

Rather, the plaintiff cites to a treatment note in which Dr. Goldsmith opines, vaguely, that he believes the plaintiff would benefit from surgery on his right knee (Tr. 622). However, the plaintiff did not undergo the surgery. Furthermore, that treatment note shows mostly normal physical examination findings. Thus, despite a positive McMurray's sign, Dr. Goldsmith stated that the plaintiff "ambulates without difficulty with no signs of an antalgic gait" (Tr. 628) and that there was no knee crepitance, instability or weakness, and only trace effusion (Tr. 621–22). Therefore, the plaintiff has not shown that the medical or other evidence compelled the law judge to find that the plaintiff had greater limitations than the significantly reduced range of light work specified in the residual functional capacity determination.[10]

It is, therefore, upon consideration,

**ORDERED:**

---

[10]The plaintiff also throws into this argument the assertion that "[t]he combination of [his] right knee, left knee and lumbar pain would preclude light jobs requiring him to stand and walk for six hours a day" (Doc. 28, p. 14). The plaintiff does not properly articulate or support this contention and, therefore, it is forfeited in accordance with the Scheduling Order (see Doc. 16, p. 2).

That the decision of the Commissioner is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 3ᵈ day of June, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE